## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LESLIE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-2387 |
| | ) | |
| CORECIVIC, INC., f/k/a CORRECTIONS | ) | |
| CORPORATION OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Leslie West ("Plaintiff"), and for her Complaint against Defendant, CoreCivic, Inc. ("Defendant"), as a result of Defendant's unlawful employment practices, states and alleges as follows:

## PARTIES

1.     Plaintiff is a resident of the State of Kansas.

2.     Defendant is corporation organized under the laws of the State of Maryland which, at all times relevant hereto, has done business in the State of Kansas and been authorized to do so.  Defendant is a private corrections management company that manages prisons, jails, and detentions facilities, including a private detention facility in Leavenworth, Kansas ("CCA-Leavenworth").  Defendant is an "employer" within the meaning of Section 2001(2) of the Employee Polygraph Protection Act, as amended, 29 U.S.C. § 2001, et seq. ("EPPA").

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this cause of action pursuant to 28 U.S.C. § 1331, 1332, 1337, and 1343(a)(4), as well as 29 U.S.C. § 2005(c)(2).

4.     The United States District Court for the District of Kansas has personal jurisdiction over Defendant inasmuch as Defendant conducts business within this District.

5.      The unlawful employment practices alleged herein were committed within this jurisdiction.

6.      Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant has offices, conducts business, and/or can be found in the District of Kansas, and the cause of action set forth herein has arisen and occurred in substantial part in this district.  Venue is also properly laid in this Court pursuant to 29 U.S.C. § 1132(e)(2) because Defendant has substantial business contacts within the State of Kansas.

## FACTS

7.      Plaintiff began her employment with Defendant on September 5, 2013 as a Corrections Officer at the CCA Leavenworth Detention Center in Leavenworth, Kansas.

8.      On April 19, 2015, Plaintiff was promoted to Lieutenant / Assistant Shift Supervisor.

9.      On June 25, 2015, Plaintiff was promoted to Captain / Shift Supervisor.

10.     On December 13, 2015, Plaintiff was promoted to Unit Manager, a position she held at the time of the unlawful termination of her employment on October 14, 2016.

11.     On numerous occasions throughout the period of her employment with Defendant, Plaintiff raised concerns regarding Defendant's practice of chronically understaffing mandatory posts at the CCA Leavenworth Detention Center.

12.     Plaintiff expressed her concern that chronic understaffing compromised the safety of corrections officers and inmates and necessarily resulted in more violent inmate incidents among inmates.

13.     In particular, Plaintiff raised these concerns with Former Warden Isaac Johnson, Chief of Security Jermaine Smith, Facility Investigator Deborah Kinney, and Chief of Security Roger Moore.

14.     Plaintiff's concerns were not addressed by any of these officials, and frequently Plaintiff was told that staffing decisions were made at a corporate level or that it was "up to corporate."

15.     On occasions when Plaintiff lacked sufficient staff to fill a particular shift, Plaintiff specifically objected to requests by her superiors to assign a "ghost" corrections officer to a particular post or to create a "ghost schedule" with knowledge that the assigned corrections officers would not actually staff the posts.

16.     These "ghost" worker schemes were purposefully designed to evade and manipulate audits undertaken by the United States Marshals Service, the entity responsible for monitoring the safety and security of the CCA Leavenworth Detention Center.

17.     In April 2017 the United States Department of Justice Office of the Inspector General issued its Audit of the United States Marshals Service Contract No. DJJODT7C0002 with CoreCivic, Inc. to Operate the Leavenworth Detention Center.  As part of its audit the Office of the Inspector General found specifically that "[i]nsufficient oversight by the USMS allowed several problems at the LDC to persist over a significant period of time.  Among the issues affecting the safety and security of the LDC that we identified was its periodic understaffing."[1]

---

[1] Audit of the United States Marshals Service Contract No. DJJODT7C0002 with CoreCivic, Inc. to Operate the Leavenworth Detention Center (https://oig.justice.gov/reports/2017/a1722.pdf#page=1)

18.     At approximately 6:00 p.m. on April 8, 2016, Plaintiff received a radio call from Chief of Security Roger Moore during which he asked Plaintiff if she was still in the building.

19.     Plaintiff was then asked by Mr. Moore to come to the front office.

20.     When she arrived, Plaintiff was informed by Mr. Moore that a group of United States Marshals were on their way to the prison as part of an investigation and that they wanted to interview her.

21.     Plaintiff was then escorted to Facility Investigator Deborah Kinney's office and asked to wait there for representatives of the United States Marshals Service.

22.     After approximately one hour, a United States Marshal arrived.  He explained that he was from the United States Marshal Service and that the woman he was with was from the Internal Revenue Service.

23.     Together with an unidentified man the United States Marshal set up a video camera and audio taping device.

24.     Plaintiff was not asked if she consented to a recorded interview.

25.     Plaintiff was not provided a Miranda warning.

26.     The United States Marshal asked Plaintiff if she had ever been asked to bring contraband to the facility.  Plaintiff said that she had not.

27.     He then explained that there is "a lot of money to be earned from this type of thing," and Plaintiff again denied that she had been asked to bring contraband to the facility or that she had engaged in any such practice.

28.     The United States Marshal then asked "would you be surprised to hear that arrests had been made today?"  Plaintiff said that she would not.

29.     When Plaintiff was asked who she felt may be on the list of those apprehended she provided two names in response.

30.     Special Assistant Prosecutor Erin Tomasic then entered the room and explained that she was the federal prosecutor responsible for the case.

31.     Ms. Tomasic then said "I think you're having a sexual relationship with Steven Rowlette, aren't you?"  Plaintiff denied Ms. Tomasic's claim and explained that she was insulted by her accusation.

32.     The United States Marshal then asked Plaintiff if she would take a polygraph examination to "clear your name."  Surrounded by two federal agents and a United States Attorney, Plaintiff felt pressured to take the polygraph examination and responded that she would do so.

33.     Plaintiff was then placed in an employee break room alone for approximately ninety minutes.

34.     At approximately 10 p.m. on April 8, 2016, Plaintiff was asked to sit for a polygraph examination in the office of Warden Linda Thomas.

35.     The polygraph examination was performed by an individual who identified himself as a member of the United States Secret Service.

36.     Following the examination he explained to Plaintiff "I can tell you were lying" said "I can help you."  He also said to Plaintiff "people will be jumping on the cooperation bus" and that if Plaintiff didn't "act soon then you will be in a lot of trouble."  He then asked Plaintiff whether she would prefer probation or prison.

37.     On April 9, 2016, Chief Security Officer Roger Moore sent Plaintiff a text message and informed her not to report to her regularly-scheduled shift that evening.

38.     On April 10, 2016, Chief Security Officer Roger Moore called Plaintiff and asked her to meet with Warden Linda Thomas at 8:00 a.m. the following day.

39.     At the meeting on April 11, 2016, Ms. Thomas gave Plaintiff a letter informing her that she was on administrative leave.  She explained to Plaintiff "I have no idea what is going on but the Marshals don't want you in the facility until their investigation is over."

40.     On April 24, 2016, Plaintiff called Warden Linda Thomas and asked about the status of the investigation and why she had not been provided additional details regarding her administrative leave.

41.     Ms. Thomas explained that she would "put a note on her calendar to call you on Mondays."

42.     Plaintiff, however, did not speak with Ms. Thomas again by phone.

43.     Plaintiff's employment was terminated in a meeting with Warden Linda Thomas and Chief of Unit Management Mike Quinn on October 14, 2016.

44.     In a letter provided to Plaintiff during the meeting, Warden Linda Thomas informed Ms. West:

> Effective October 14, 2016, your employment with CCA Leavenworth Detention Center is terminated.  We were notified on July 21st, 2016, that your NCIC clearance from the United States Marshal's Service was revoked.  Patiently, we have awaited any changes or events that would have your NCIC clearance re-instated, to no avail.  Should your status change, please feel free to re-apply for jobs you may qualify [sic].  The needs of the facility dictate that we move forward, filling your position.

45.     Plaintiff later confirmed that her National Crime Information Center ("NCIC") clearance was not revoked on July 21, 2016 or at any time before or thereafter.

## COUNT I – VIOLATION OF THE EMPLOYEE POLYGRAPH PROTECTION ACT

46.     Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

47.     The EPPA at 29 U.S.C. Section 2002 provides that it is unlawful for an employer:

> (1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test;

> (2) to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee or prospective employee;

> (3) to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against –

>> (A) any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test, or

>> (B) any employee or prospective employee on the basis of the results of any lie detector test.

29 U.S.C. § 2002.

48.     The EPPA defines "employer" to include "any person acting directly or indirectly in the interest of any employer in relation to an employee or prospective employee."  29 U.S.C. § 2001(2).

49.     The EPPA defines "lie detector" to include "a polygraph, deceptograph, voice stress analyzer, psychological stress evaluator, or any other similar device (whether mechanical or electrical) that is used, or the results of which are used, for the purpose of rendering a diagnostic opinion regarding the honesty or dishonesty of an individual." 29 U.S.C. § 2001(3).

50.     The EPPA states that an employer is required to "post and maintain such notice [of the relevant protections afforded under the EPPA] in conspicuous places on its premises where notices to employees and applicants are customarily posted." 29 U.S.C. § 2003.

7

51.     The EPPA provides for an employee's right to a private cause of action for violations of the EPPA, and specifically prohibits an attempt by an employer to waive an employee's protections under the Act:

> An employer who violates this chapter shall be liable to the employee or prospective employee affected by such violation.  Such employer shall be liable for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits.
> …
> The rights and procedures provided by this chapter may not be waived by contract or otherwise, unless such waiver is part of a written settlement agreement to and signed by the parties to the pending action or complaint under this chapter.

29 U.S.C. § 2005(c)(1) and (d).

52.     As set forth herein, Defendant has violated the EPPA by:

(a) directly and/or indirectly requiring, requesting, suggesting, and/or causing Plaintiff to take and/or submit to a lie detector test in violation of 29 U.S.C. Section 2002(1);

(b) using, accepting, referring to, or inquiring concerning the results of a lie detector test administered to Plaintiff in violation of 29 U.S.C. Section 2002(2);

(c) discharging, disciplining, and/or discriminating against Plaintiff on the basis of a lie detector test administered to Plaintiff in violation of 29 U.S.C. Section 2002(3)(B).

53.     As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

54.     As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

55.     Defendant engaged in these unlawful practices with malice or reckless indifference to the federally protected rights of Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

56.     Plaintiff is entitled to recover from Defendant her reasonable attorneys' fees, as provided in 29 U.S.C. Section 2005(c)(3).

WHEREFORE, Plaintiff prays for judgment against Defendant, for her reinstatement with the same seniority status, for an award of back pay, including lost fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' fees provided by 29 U.S.C. § 2005(c)(3); and for such other and further relief the Court deems just and proper.

## COUNT II – WRONGFUL TERMINATION IN VIOLATION OF KANSAS PUBLIC POLICY

57.     Plaintiff hereby incorporates each preceding paragraph as though fully set forth herein.

58.     Plaintiff was employed by Defendant.

59.     The protections set forth in the EPPA constitute a clear mandate of Kansas public policy reflected in both statutes and regulations promulgated pursuant to statute.

60.     The adequate staffing of prisons and inmate safety also constitute clear mandates of Kansas public policy.

61.     A reasonably prudent person would have concluded that Defendant was engaged in activities that violated rules, regulations, or the law pertaining to public health and safety and the general welfare.

9

62.     Plaintiff's reports constitute a good faith reporting of a serious infraction of rules, regulations, or the law to company management.

63.     Plaintiff's reports were made in good faith based on a concern regarding the wrongful activities she reported rather than for a corrupt motive.

64.     A reasonably prudent person would have concluded that Defendant was engaged in activities that violated rules, regulations, or the law.

65.     Plaintiff's employment was terminated as a direct and proximate result of the unlawful activities undertaken by Defendant.

66.     As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

67.     As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

68.     Defendant engaged in these unlawful practices with malice or reckless indifference to the federally protected rights of Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by the public policy of the State of Kansas; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; equitable relief including reinstatement to a work environment where Plaintiff is not subjected to retaliatory

conduct; for her costs expended; and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

## DESIGNATED TRIAL LOCATION

Pursuant to D. Kan. Rule 40.2, Plaintiff hereby designates the place of trial as **Kansas City, Kansas**.

Respectfully submitted,



/s/ Lewis M. Galloway
Lewis Galloway        Kansas Bar No. 20172
1600 Genessee St, Suite 918
Kansas City, MO 64102
Phone: (816) 442-7002
Fax:    (816) 326-0820
lewis@lglawllc.com

ATTORNEY FOR PLAINTIFF