IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LESLIE WEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 18-02387-CM-KGG |
| CORECIVIC, INC., f/k/a CORRECTIONS ) | |
| CORPORATION OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Defendant CoreCivic, Inc. moves to dismiss plaintiff Leslie West's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under the Employee Polygraph Protection Act ("EPPA"). (Doc. 22)

### I. LEGAL STANDARDS

#### A. 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the court assumes true all well-pleaded facts in the complaint, disregards all legal conclusions couched as factual allegations, and grants the plaintiff all reasonable inferences from the pleadings. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (quotation marks omitted).

-1-

**B. EPPA**

The court begins with the plain text of the statute, using traditional tools of interpretation, and defers to permissible constructions by a statute's administering agency where the statute is silent or ambiguous as to the precise question at issue. *See TransAm Trucking, Inc. v. Admin. Review Bd.*, 833 F.3d 1206, 1210 (10th Cir. 2016) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.* 467 U.S. 837, 843 (1984)).

The EPPA prohibits an employer from either directly or indirectly "requir[ing], request[ing], suggest[ing], or caus[ing] any employee or prospective employee to take or submit to any lie detector test." 29 U.S.C. § 2002(1) (2012). "Employer" is defined to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee," and "Lie detector" is defined to "include[] a polygraph." *Id.* § 2001(2), (3). The Act exempts from liability certain employers and circumstances not relevant to this motion, and further commands the Department of Labor to issue rules and regulations as necessary to carry out its mandates. *See id.* § 2004(a).

Department regulations interpreting the Act clarify the type of employer activity that does not rise to the level of prohibited conduct despite not falling within a statutory exemption. 29 C.F.R. § 801.4 (1991).

> For example, it is not uncommon for police authorities to request employees suspected of theft or criminal activity to submit to a polygraph test during the employee's tour of duty since, as a general rule, suspect employees are often difficult to locate away from their place of employment. Allowing a test on the employer's premises, releasing an employee during working hours to take a test at police headquarters, and other similar types of cooperation at the request of the police authorities would not be construed as "requiring, requesting, suggesting, or causing, directly or indirectly, any employee * * * to take or submit to a lie detector test."

*Id.* § 801.4(b).

There is little Tenth Circuit or Kansas authority interpreting the EPPA, and no authority from either source interpreting the scope of prohibited conduct. *See Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1247–50 (10th Cir. 2006) (applying "economic reality" test interpreting "employer" under the EPPA); *Kluge v. O'Reilly Automotive, Inc.*, No. Civ. A. 94-2159-GTV, 1994 WL 409575, at *2–3 (D. Kan. Aug. 3, 1994) (discussing insufficient allegations of "employer" status under same).

## II.     FACTUAL BACKGROUND

Plaintiff is a resident of Kansas and former employee of defendant.  Defendant is a private corrections management corporation organized under Maryland law, doing business and managing a private detention facility in Leavenworth, Kansas ("CCA Leavenworth").  Plaintiff began her employment with defendant on September 5, 2013 as a Corrections Officer at CCA Leavenworth.  From hiring through December 13, 2015, defendant promoted plaintiff three times: first, to Lieutenant / Assistant Shift Supervisor; second, to Captain / Shift Supervisor; and third, to Unit Manager.  Defendant terminated plaintiff's employment on October 14, 2016.

Throughout her employment at CCA Leavenworth, plaintiff raised concerns about defendant's understaffing of mandatory posts at the facility.  Plaintiff expressed concern that this understaffing compromised the safety of corrections officers and inmates and resulted in more violent inmate incidents.  Plaintiff raised these concerns with Former Warden Isaac Johnson, Chief of Security Jermaine Smith, Facility Investigator Deborah Kinney ("Kinney"), and Chief of Security Roger Moore ("Moore").  Plaintiff's concerns were not addressed, and plaintiff was told that staffing decisions were "up to corporate."

In April 2016, following a search warrant executed in the District of Kansas, federal agents investigated allegations of contraband within CCA Leavenworth.[1]  Around 6:00 p.m. on April 8, 2016, plaintiff received a radio call from Moore, asking her if she was still in the building and to come to the front office.  Upon her arrival, Moore informed plaintiff that a group of U.S. Marshals were on their way to the prison as part of an investigation and that the marshals wanted to interview her.  Plaintiff was escorted to Kinney's office and asked to wait there for representatives of the Marshals Service.

A marshal arrived approximately one hour later with a woman he identified as an IRS representative.  The marshal and a second man set up a video camera and audio recording device.  Plaintiff was neither asked if she consented to a recorded interview nor provided Miranda warnings.  The marshal asked plaintiff if she had been asked to bring contraband to the facility, and plaintiff said she had not.  The marshal implied that plaintiff may have been tempted to do so, and plaintiff again denied that she had either been asked to bring contraband to the facility or actually brought contraband to the facility.  The marshal asked plaintiff if she would be surprised to learn arrests had been made that day, and she responded she would not.  Plaintiff was asked who she felt might have been arrested, and plaintiff provided two names.

Special Assistant Prosecutor Erin Tomasic then entered, identified herself as the federal prosecutor responsible for the case, and accused plaintiff of having a sexual relationship with an inmate.  Plaintiff denied this claim and explained that she was insulted by the accusation.  The marshal then asked plaintiff if she would take a polygraph to "clear [her] name."  Plaintiff felt pressured to agree and did.  After consenting to polygraph examination, plaintiff was placed in an employee break room for approximately 90 minutes.

---

[1] The court takes judicial notice of the existence of the search warrant as part of its own files and records from judicial proceedings which do not convert motions under Rule 12(b)(6) into motions for summary judgment.  *See Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2007).

Following this agreement through approximately 10:00 p.m., plaintiff demanded to see Moore and explained to him the accusation by Ms. Tomasic. Plaintiff explained she had been interviewed by a marshal and that the marshal had asked if plaintiff would take a polygraph to "clear her name." Moore told plaintiff to "just relax" and to "do whatever they ask[ed] [her] to do." It is not clear whether plaintiff told Moore she had already consented to polygraph examination.

At approximately 10:00 p.m. Moore asked plaintiff to sit for a polygraph examination in the office of Warden Linda Thomas ("Thomas"). The examination was administered by an individual who identified himself as a member of the United States Secret Service. Following the examination, the examiner told plaintiff that he could "tell [she was] lying," that he could help her, that "people [would] be jumping on the cooperation bus," and that if plaintiff did not "act soon then [she would] be in a lot of trouble." He asked plaintiff if she would prefer probation or prison.

On April 9, 2016, Moore instructed plaintiff not to report to her shift that evening. On April 10, 2016, Moore called plaintiff and asked her to meet with Thomas the following day. On April 11, 2016, Thomas gave plaintiff a letter informing her that she was on administrative leave, and verbally informed her that Thomas "had no idea what [was] going on but the Marshals [did not] want [plaintiff] in the facility until their investigation [was] over."

Plaintiff attempted unsuccessfully to contact Thomas for more details regarding the status of her leave and the investigation. Plaintiff's employment was terminated by letter in a meeting with Thomas and Chief of Unit Management Mike Quinn on October 14, 2016. The letter indicated that plaintiff's National Crime Information Center ("NCIC") clearance was revoked on July 21, 2016 and had not (as of the meeting) been reinstated. Plaintiff later confirmed that her NCIC clearance was not revoked on or at any time before or after the date provided.

-5-

## III.     DISCUSSION

The central dispute in this motion is whether, in context, an employer's seemingly-ambiguous remarks were intended to cause an employee to submit to a polygraph examination.  This ambiguity exists because the court lacks complete information about what facts were communicated by plaintiff to Moore in between plaintiff's consent to polygraph examination and the administration of that examination in the office of Ms. Thomas.

It is clear from the complaint that plaintiff consented to polygraph examination, that this consent was requested by and communicated to federal agents, and that federal agents interviewed plaintiff and accused her of misconduct.  After giving consent, plaintiff met with Moore and explained at least some of her interaction with federal agents, including the accusations and that she was asked to take a polygraph examination.  However, the complaint does not show that plaintiff told Moore she had consented to polygraph examination.  Accordingly, Moore's remarks are analyzed considering this ambiguity and possible inferences.

The text of the EPPA expressly prohibits an employer from directly or indirectly causing an employee to take or submit to a polygraph examination.  However, the Act is silent regarding when an employer's ambiguous remarks rise to the level of "requir[ing], request[ing], suggest[ing], or caus[ing] any employee" to submit to polygraph examination by federal agents in the context of both a search warrant and prior consent.  29 U.S.C. § 2002(1).  Accordingly, the court turns to DOL guidance, which provides that "[a]llowing a test on the employer's premises . . . and other similar types of cooperation" are "not construed as [violating the Act]," and that this type of cooperation "must be distinguished from actual participation in the testing of employees" through the employer either administering or funding the examination.  29 C.F.R. § 801.4(b).  Thus, if it were clear from the complaint that Moore only made a room available for plaintiff's polygraph examination, there would be no plausible

-6-

violation of the EPPA because all alleged involvement in the polygraph examination would be by federal agents and not by an "employer" under the Act.

Seeing no relevant binding authority, the court looks to persuasive guidance from other jurisdictions handling both the scope of the EPPA's prohibitions and the permissible level of employer involvement. The Eleventh Circuit has examined the breadth of the Act's prohibitions, noting that its coverage includes employer requests or suggestions "even where [a] test is ultimately not administered and no adverse employment action is taken as a consequence." *Polkey v. Transtecs Corp.*, 404 F.3d 1264, 1268 (11th Cir. 2005). The Circuit similarly found little detailed guidance, noting that "[b]ecause the EPPA's broad prohibitions have virtually eliminated polygraph exams from the workplace, there is little precedent interpreting the statute." *Id.* n.5.

The Northern District of Iowa has dealt with highly similar circumstances in *Mennen v. Easter Stores*. 951 F. Supp. 838, 852–54 (N.D. Iowa 1997). In *Mennen*, a detective asked the employee to take a polygraph examination, and the employee consented "to clear his name." *Id.* at 853. The police department needed the employer's permission to ask the employee to consent to polygraph examination, and the employer provided that permission. *Id.* The court noted that "[a]lthough [the employer] had the power to veto the administration of the examination, it did not [violate the EPPA]," and "[r]ather, [the employee] chose to take the polygraph examination at the request of [law enforcement]." *Id.* The court then concluded that "[w]hile it may not be free from all doubt," the employer "had not yet crossed that line between merely cooperating [and] actively participating in the investigation." *Id.* Unlike the instant motion, the *Mennen* judgment resulted from a bench trial and findings of fact by the court. *See id.* at 843–44.

Here, Moore's statements to plaintiff to "just relax" and to "do whatever they ask[ed] [her] to do" in the surrounding context of his ambiguous knowledge result in at least three reasonable and

-7-

alternative inferences.  First, if Moore knew plaintiff consented to polygraph examination and did not believe that plaintiff intended to revoke consent or otherwise refuse the examination, Moore may have merely made Warden Thomas's office available for the examination, a permissible action consistent with DOL regulations.  Second, if Moore understood that plaintiff had consented, but also that plaintiff intended to revoke consent, Moore's remarks could have been intended to prevent plaintiff's revocation of consent, "caus[ing]" her to submit to the examination.  Third, Moore may *not* have understood that plaintiff had consented to polygraph examination, and his remarks may have been intended to cause her to submit to the examination.

Two of these three possible inferences, which resolve the ambiguity of information communicated to Moore, would plausibly state a claim for relief under the EPPA.  Because the court is required to make all reasonable inferences in plaintiff's favor, plaintiff has plausibly stated a claim for relief under the EPPA, and defendant's motion to dismiss must be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. 22) is denied.

Dated this 26th day of June, 2019, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**